UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
RAYMOND WADE,

                           Plaintiff,

        -against-

THE COUNTY OF NASSAU, POLICE
OFFICER KENNY RODRIGUEZ, POLICE
OFFICER DONALD COUPE, DETECTIVE
LIEUTENANT JOHN AZZATA, FORMER
POLICE COMMISSIONER LAWRENCE W.
MULVEY and POLICE OFFICERS JOHN AND
JANE DOES 1-3,

                           Defendants.
-----------------------------------------------------------------------x

**DECISION AND ORDER**
13-cv-4986(ADS)(AKT)

<u>**APPEARANCES:**</u>

**Kevin P. O'Donnell, Esq.**
*Attorney for the Plaintiff*
125-10 Queens Blvd., Suite 15
Kew Gardens, NY 11415

**Nassau County Attorney's Office**
*Co-Counsel for the Defendants*
One West Street
Mineola, NY 11501
      By:   Pablo A. Fernandez, Deputy County Attorney

**SPATT, District Judge:**

On September 6, 2013, the Plaintiff Raymond Wade (the "Plaintiff" or

"Wade") commenced this civil rights action against the Defendants County of

Nassau (the "County"), Police Officer Kenny Rodriguez ("Rodriguez"), Police Officer

Donald Coupe ("Coupe"), Detective Lieutenant John Azzata ("Azzata"), and Former

Police Commissioner Lawrence W. Mulvey ("Mulvey," together with the County, Rodriguez, Coupe, and Azzata, the "Defendants").

The complaint alleges causes of action based on false imprisonment, false arrest, malicious prosecution, and municipal liability under 42 U.S.C. § 1983; as well as inadequate training and Brady violations, under 42 U.S.C. § 1981.

Presently before the Court is an unopposed motion by the Defendants, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 41, to dismiss the complaint for failure to prosecute.

## I.    Background

As noted above, the complaint was filed on September 6, 2013. The Plaintiff's claims arise from his allegedly wrongful arrest on a 2010 murder charge. He asserts violations of his civil rights, and seeks resultant damages.

On October 3, 2013, United States Magistrate Judge A. Kathleen Tomlinson scheduled an initial conference for November 25, 2013. This conference was subsequently adjourned to December 17, 2013.

On that date, Magistrate Judge Tomlinson adopted the parties' proposed discovery plan, and formalized this plan in an Initial Case Management and Scheduling Order (the "Scheduling Order"). Among other things, the Scheduling Order required the parties to submit a report regarding the status of discovery no later than May 1, 2014, which would be followed by a status conference on May 6, 2014. In the meantime, the parties were to begin exchanging written discovery.

By May 5, 2014, the parties did not file the status report which had been due four days earlier. Magistrate Judge Tomlinson issued an electronic order directing the report to be filed by 5:00 P.M. that day.

In response to this directive, the Defendants filed a status report, which outlined numerous instances of inaction by the Plaintiff and his counsel, Kevin P. O'Donnell, Esq. ("O'Donnell"). For example, the Defendants asserted that, on December 16, 2013, they had circulated a proposed Electronically Stored Information Agreement and Stipulation of Confidentiality to O'Donnell for his review and comments. Since then, nearly five months had passed without a response.

Further, at the December 17, 2013 initial conference, the court ordered O'Donnell to supply HIPAA-compliant records release authorizations to the Defendants by January 3, 2014. However, approximately four months after the expiration of this deadline, he had not done so.

The Defendants further advised that, although the Scheduling Order required document production and responses to requests for interrogatories to be completed by March 18, 2014, both remained incomplete. In this regard, the Defendants asserted that they were unable to access critical documents regarding the Plaintiff's claims because the Plaintiff had not provided the necessary authorization to unseal his criminal records.

The assigned Deputy County Attorney advised the Court that he had attempted to communicate with O'Donnell regarding these outstanding issues, but had not received a response.

On May 6, 2014, Magistrate Judge Tomlinson held the scheduled status conference, but O'Donnell did not appear. In a related Civil Conference Minute Order, Judge Tomlinson stated the following:

> Counsel for the plaintiff did not appear at today's conference. Plaintiff has not participated in discovery nor complied with the prior Orders of this Court. Therefore, the Court will enter a separate Order directing plaintiff's counsel to appear and show cause why this action should not be dismissed for plaintiff's failure to prosecute his claims and his failure to comply with the Orders of this Court.

Docket Entry ("DE") [17].

This was formalized in an order to show cause, made returnable on May 27, 2014 at 12:00 P.M. The Court notes that Judge Tomlinson's order cautioned that if O'Donnell did not appear on the return date, she would recommend to this Court that the case be dismissed.

On May 27, 2014, counsel for all parties appeared before Judge Tomlinson for the scheduled order to show cause hearing. As indicated in a related Civil Conference Minute Order, O'Donnell "offered a sincere apology to the Court and explained that there ha[d] been a series of complicating events which have made the course of discovery [in this case] problematic." In this regard, O'Donnell advised Judge Tomlinson that the Plaintiff had recently been indicted on a new murder charge. He indicated that he was in discussions with the Plaintiff concerning the

need to withdraw this civil action, and that if he could not resolve this issue, he would likely move to be relieved as counsel.

Judge Tomlinson granted O'Donnell additional time to continue these discussions with his client, and scheduled a telephone conference for June 26, 2014. However, on that date, O'Donnell failed to appear. Due to O'Donnell's non-appearance, Judge Tomlinson adjourned the telephone conference to July 8, 2014, and cautioned that "the adjourned date will not be further extended and plaintiff's counsel is required to participate and provide the Court with an update on his meetings/conversations with his client as directed at the last conference."

On July 8, 2014, counsel for all parties appeared by telephone for a status conference with Judge Tomlinson. A related Civil Conference Minute Order indicates that, despite O'Donnell's recommendation, the Plaintiff did not consent to withdraw this action. Accordingly, O'Donnell indicated that he would seek to be relieved as counsel. Judge Tomlinson gave O'Donnell until July 31, 2014 to make a motion to withdraw as counsel, and stayed discovery until further notice.

The July 31, 2014 motion deadline passed, without any filings by O'Donnell.

Approximately eight months later, on March 2, 2015, the Defendants made the instant motion to dismiss the case for failure to prosecute. Upon receiving the motion, Judge Tomlinson scheduled a conference for March 25, 2015 at 9:30 A.M.

On that date, O'Donnell again failed to appear for the conference. In a related Civil Conference Minute Order, Judge Tomlinson stated, in relevant part:

This case cannot remain in its current status. Likewise, defendants are entitled to a decision on their motion [to dismiss for failure to prosecute]. However, the Court has a concern that the plaintiff himself, Raymond Wade, may not have any idea of the status of this case. Therefore, the Court will issue an Order To Show Cause directly to Raymond Wade apprising him of the circumstances and giving him an opportunity to oppose the motion seeking dismissal of the case for failure to prosecute by a date certain. If Raymond Wade does not respond, then the Court will proceed to treat the motion as unopposed.

\* \* \*

The Court also intends to issue an Order To Show Cause to Attorney O'Donnell requiring him to appear and show cause, as attorney of record, why he should not be sanctioned for his failure to act in this matter and his failure to appear and comply with the Orders of this Court.

DE [27].

On March 26, 2015, counsel for the Defendants served a copy of the above-quoted Civil Conference Minute Order upon the Plaintiff at the Nassau County Correctional Center.

On April 9, 2015, the Plaintiff sent a responsive letter to Judge Tomlinson, which stated the following:

In reference to the civil conference minute order I received at Nassau County Correctional center. Mr Kevin P O'Donnell should be disbarred or sanction for what he has done to me in this present case & my current law suit with Nassau County. Mr O'Donnell informed me that he owed his friend ADA Martin Meaney a favor and he needed me to cooperate with Mr. Meaney. When I refused to, he went through great length to sabotage my current case and my lawsuit with Nassau County.

Mr O'donnell last visit to me was May 2014 where he keeps pressuring me to drop my lawsuit against Nassau County or else the Federal Government will be filing charges against me on conspiracy how he's been in contact with Nicole Boeckmann. He did everything but accused me of being a gang member.

6

> I advised Mr. O'Donnell that I was not dropping my lawsuit against
> Nassau County.  I have not heard from Mr. O'donnell.  This legal
> system should be just & fair.  Attorneys are supposed to obey the law
> they take an oath to defend the law.  Mr. O'Donnell has not nothing
> but sabotage my new case and now my lawsuit against Nassau County.
>
> Judge Tomlinson had you not ordered these papers served to me at
> Nassau County Correctional Center I would not have known any of
> this.  My parents filed papers to the Bar Association against Mr.
> O'Donnell.  We trusted him and he went through great length to
> sabotage me at every length possible.

DE [29].

This letter from the Plaintiff attached correspondence from O'Donnell, dated May 7, 2014.  The Plaintiff asserts that this correspondence, from approximately eleven months earlier, reflects the last time he heard from O'Donnell.  The letter also attached a written complaint, dated July 28, 2014, that the Plaintiff's mother made about O'Donnell.  However, it is not clear to whom this complaint was directed.

On April 30, 2015, Judge Tomlinson issued a Notice of Contempt Hearing, requiring O'Donnell to appear on May 28, 2015 at 2:00 P.M. and show cause why he should not be found in contempt of court for failing to appear at court conferences; failing to comply with court orders; and why the court should not take further action as to attorney discipline against him.  A copy of this notice was served on the Plaintiff at the Nassau County Correctional Center.

O'Donnell did not appear for his scheduled contempt hearing.  Nor did he attempt to contact the court or defense counsel.  In a related Civil Conference Minute Order, which was posted on the Court's public docket and mailed to

O'Donnell's office, Judge Tomlinson provided notice that she "intends to refer this matter to the Grievance Committee of the federal court for the Eastern District of New York for its review as to attorney O'Donnell's conduct is this case." However, Judge Tomlinson agreed to give O'Donnell one final opportunity to avert such action, namely, to contact the court by June 10, 2015.

On June 2, 2015, O'Donnell wrote a letter to Judge Tomlinson expressing "deep[ ] regret" for his inaction and requesting permission to file a letter under seal to explain certain "personal issues" which he claimed "distracted him" from his professional responsibilities. Judge Tomlinson granted this request, and directed O'Donnell to file his letter no later than June 30, 2015.

To date, more than six months has passed since the expiration of this deadline and O'Donnell filed nothing. Nor has he communicated with the court or defense counsel.

Of particular note, the instant motion to dismiss has been pending for more than ten months without any response or opposition by the Plaintiff.

## II.  Discussion

### A.  The Applicable Legal Standards

"A district court may dismiss a complaint pursuant to Rule 41(b) of the Federal Rules of Civil Procedure for, *inter alia*, failure to prosecute or to comply with a court order." <u>Brown v. Cnty. of Nassau</u>, 14-cv-0247, 2015 U.S. Dist. LEXIS 44654, at *4 (E.D.N.Y. Apr. 6, 2015) (citing <u>Lewis v. Rawson</u>, 564 F.3d 569, 575 (2d Cir. 2009); <u>U.S. ex rel. Drake v. Norden Systems, Inc.</u>, 375 F.3d 248, 250 (2d Cir.

2004)). "Courts have repeatedly found that '[d]ismissal of an action is warranted when a litigant, whether represented or instead proceeding *pro se*, fails to comply with legitimate court directives. . . .'" <u>Kuar v. Mawn</u>, 08-cv-4401, 2012 U.S. Dist. LEXIS 125270, at *9 (E.D.N.Y. Sept. 4, 2012) (quoting (quoting <u>Yulle v. Barkley</u>, 05-cv-0802, 2007 U.S. Dist. LEXIS 99051, at *3 (N.D.N.Y. July 3, 2007) (Report and Recommendation), <u>adopted</u>, 2007 U.S. Dist. LEXIS 53832 (N.D.N.Y. July 25, 2007)).

As one district court has explained:

> In considering whether to dismiss an action for failure to prosecute or to comply with a Court order, courts must consider the following factors, although no one factor is dispositive: (1) the duration of the plaintiff's failures or non-compliance; (2) whether the plaintiff was on notice that the delay would result in dismissal; (3) whether the defendant is likely to be prejudiced by any further delay in the proceedings; (4) whether the court's interest in managing its docket outweighs the plaintiff's interest in receiving an opportunity to be heard; and (5) whether a lesser sanction is available and would be effective.

<u>Brown</u>, 2015 U.S. Dist. LEXIS 44654, at *5 (citing <u>Baptiste v. Sommers</u>, 768 F.3d 212, 216 (2d Cir. 2014); <u>Lewis</u>, 564 F.3d at 576).

"The decision to grant dismissal pursuant to Rule 41(b) is committed to the discretion of the trial court." <u>Nicastro v. Sloan Kettering Mem. Hosp.</u>, 94-cv-2406, 1996 U.S. Dist. LEXIS 5179 (S.D.N.Y. Apr. 22, 1996) (citing <u>Colon v. Mack</u>, 56 F.3d 5, 7 (2d Cir. 1995)).

**B.     Application of the Relevant Factors to the Facts of this Case**

In the Court's view, the simple fact that this case is more than two years old and has not progressed in any meaningful way past the initial discovery conference

is sufficient, without more, to justify dismissal.  However, even if this were not the case, consideration of the relevant evaluative factors produces the same result.

### 1.    The First Factor – The Duration of the Plaintiff's Inaction or Non-Compliance

The first factor, namely, the duration of the Plaintiff's non-compliance, weighs decidedly in favor of dismissal.  In this regard, the record is clear that, since filing the complaint in September 2013, the Plaintiff has taken no action whatsoever to advance the litigation, and in fact, has embarked on a course of conduct the effect of which has been to unnecessarily delay the proceedings.

Also, apparently, to date, the Plaintiff has not fulfilled any of his discovery obligations.   In a May 5, 2015 status report, defense counsel advised Judge Tomlinson that, for five months after the initial conference, the Plaintiff had not provided responses to proposed confidentiality and ESI agreements; had not supplied court-ordered HIPAA release authorizations; had not produced any relevant documents or responded to the Defendants' requests for interrogatories; had not provided authorization to unseal the Plaintiff's relevant criminal records; and, importantly, had not responded to any of the attempts by defense counsel to confer about these issues.  There is no evidence to suggest that these deficiencies were cured prior to the date of this Order.

Further, Plaintiff's counsel has repeatedly disobeyed court orders and failed to attend scheduled court conferences.  For example, O'Donnell did not appear for a May 6, 2014 status conference, prompting Judge Tomlinson to order that he show cause why this action should not be dismissed for failure to prosecute.  On May 27,

2014, after Judge Tomlinson granted O'Donnell additional time to discuss this case with his client, he failed to appear for the scheduled follow-up conference. On July 8, 2014, O'Donnell asked Judge Tomlinson for leave to file a motion to withdraw as counsel, which she granted. However, he never filed the motion. The Court scheduled another conference approximately eight months later, on March 25, 2015, after the Defendants sought dismissal of this action. O'Donnell again failed to appear.

Apparently, throughout all of this time, O'Donnell may have failed to adhere to his responsibilities to his client. In a lengthy letter to the court, the Plaintiff himself indicated that he had no knowledge of the numerous scheduled court conferences and ongoing discovery. In fact, the Plaintiff indicated that O'Donnell had not spoken to him in approximately eleven months.

As noted above, upon receiving this information, Judge Tomlinson scheduled a contempt hearing for May 28, 2015, which O'Donnell did not attend. Only after Judge Tomlinson warned that she planned to refer him to the grievance committee did O'Donnell contact the court and request an opportunity to explain himself in a sealed letter. Judge Tomlinson granted this request, but O'Donnell never filed any such letter.

Under these circumstances, clear Second Circuit precedent favors dismissal. See, e.g., Hunter v. N.Y. State Dep't of Corr. Servs., 515 F. App'x 40 (2d Cir. 2013) (affirming dismissal where the only action taken by the plaintiff to prosecute her case over a fourteen-month period was submitting to a single deposition); Smalls v.

Port Auth., 120 F. App'x 396, 396-98 (2d Cir. 2005) (affirming dismissal where, "[f]or twenty-one months after commencement of th[e] action, plaintiff took no action to prosecute th[e] case" and eventually failed to comply with an order to show cause why the case should not be dismissed for failure to prosecute); Shannon v. GE, 186 F.3d 186, 194 (2d Cir. 1999) (affirming dismissal where the only action the plaintiff took during a two-year period was to file an untimely notice of appeal).  As the court noted in the Shannon case, "those cases in which [the Second Circuit] has reversed dismissal for failure to prosecute have involved substantially shorter delays than the one at issue here."  Id. (collecting cases).

In the Court's view, this conclusion is particularly appropriate here because O'Donnell has provided no explanation for his failures; has not opposed the instant motion to dismiss; and has displayed "complete intransigence in the face of [multiple] clear court order[s]."  Chira v. Lockheed Aircraft Corp., 634 F.2d 664, 667 (2d Cir. 1980); see Feurtado v. City of New York, 225 F.R.D. 474, 479 (S.D.N.Y. 2004) (collecting cases for the proposition that, although "[t]here is no time frame specifically identifying the point at which a Rule 41(b) dismissal is warranted," even a " 'short delay' by the plaintiff may 'still properly result in dismissal if [plaintiff] had willfully failed to comply with multiple court orders' during the course of the action" (quoting Graham v. Sullivan, 86-cv-163, 1999 U.S. Dist. LEXIS 17172 (S.D.N.Y. Nov. 5, 1999))); Antonios A. Alevizopoulos & Assoc. v. Comcast Int'l Holdings, Inc., 99-cv-9311, 2000 U.S. Dist. LEXIS 16154, at *6-*7 (S.D.N.Y. Nov. 8, 2000) (granting dismissal where the plaintiff, among other things, failed to comply

with two court-ordered deadlines; failed to oppose the motion to dismiss; and failed to "provide[ ] any reasonable explanation for his complete inaction and willful disregard of th[e] Court's orders").

## 2. The Second Factor – Whether the Plaintiff Received Adequate Notice of the Risk of Dismissal

The second analytical factor on a motion for a default judgment, namely, whether the Plaintiff was on notice that further delays would result in dismissal, also weighs decidedly in favor of dismissal.

On three separate occasions, Judge Tomlinson gave direct notice to O'Donnell that further delays and noncompliance with the court's orders would result in dismissal or worse, namely, attorney discipline. There is no question that O'Donnell received these notices, as he repeatedly offered apologies to the Court and requested leniencies, such as extensions of time and leave to file explanatory papers. However, on each such occasion, O'Donnell failed to attend subsequent court appearances, and declined the very opportunities to submit papers that he had previously sought.

Further, this matter is presently before the Court on a motion to dismiss, notice of which was provided to the Plaintiff, but which has gone unopposed for approximately ten months. Thus, the facts of this case clearly satisfy the relevant Second Circuit standard, namely, that the adequacy of notice turns on whether the Plaintiff was advised that further delays would result in dismissal. See Feurtado, 225 F.R.D. at 479 (quoting Norden Sys., 375 F.3d at 255 (internal quotation marks omitted)); Id. at 479-80 (finding dismissal appropriate where the plaintiff received

notice on two separate occasions that further delays would result in dismissal and failed to oppose a motion to dismiss for failure to prosecute); see also Aybar v. City of New York, 13-cv-825, 2014 U.S. Dist. LEXIS 125087, at *11-*12 (E.D.N.Y. Sept. 8, 2014) (finding dismissal appropriate where the plaintiff failed to respond to the defendant's motion to dismiss, despite being cautioned by the court on four separate occasions of the possibility that "further inaction would result in dismissal"; noting that "plaintiffs have failed to take any substantial steps to move their case forward for approximately one year, despite their stated desire to continue the case, and have not offered any reason for their inaction").

### 3. The Third Factor – Whether the Defendants Will be Prejudiced by Further Delay

With regard to the third factor, the Second Circuit has noted that "prejudice to defendants resulting from unreasonable delay may be presumed." Shannon, 186 F.3d at 195 (quoting Lyell Theatre Corp. v. Loews Corp., 682 F.2d 37, 43 (2d Cir. 1982)). "This is because delay by one party increases the likelihood that evidence in support of the other party's position will be lost and that discovery and trial will be made more difficult." Id. (citing Romandette v. Wheetabix Co., 807 F.2d 309, 312 (2d Cir. 1986)). "A presumption of prejudice is particularly appropriate where, as here, the plaintiff's delay was prolonged." Shannon, 186 F.3d at 195 (citing Lyell Theatre, 682 F.2d at 43 (noting that "in cases where delay is more moderate or excusable, the need to show actual prejudice is proportionally greater")).

In this case, the Court finds that the Defendants will be prejudiced by further delay. To date, the Defendants have spent more than two years actively defending

an essentially inactive lawsuit. In this regard, the assigned Deputy County Attorneys have appeared for numerous court conferences; have substantially complied with outstanding court orders; have served discovery demands and sought authorization to view relevant underlying records; and have apparently made diligent efforts to communicate with the Plaintiff's attorney to advance the case forward. Nevertheless, as noted above, the Plaintiff has done almost nothing to prosecute the matter, and the litigation has effectively stalled at the pleading phase.

Under these circumstances, the Court finds that it would be manifestly unfair to require the Defendants to continue participating in this action. See Aybar, 2014 U.S. Dist. LEXIS 125087, at *12 (finding prejudice where "defendants ha[d] expended time and money to fully defend a lawsuit that plaintiffs ha[d] shown no real interest in pursuing"); see also Blanc v. Experian Info. Solutions, Inc., 13-cv-7209, 2015 U.S. Dist. LEXIS 170411, at *17 (S.D.N.Y. Dec. 17, 2015) ("With regard to possible prejudice . . . , a failure to dismiss would likely leave the case pending for an indefinite time into the future, or at least until plaintiffs changed their minds or the court lost patience. Accordingly, we may infer the likelihood of some prejudice if the motion were not granted" (internal citation and alterations omitted)); Paige v. LaCoste, 10-cv-3356, 2014 U.S. Dist. LEXIS 137722, at *15-*16 (E.D.N.Y. May 8, 2014) (Report and Recommendation) (presuming prejudice to the defendants where the plaintiff failed to serve discovery responses for more than a year after the applicable deadline expired; noting that "Plaintiff's non-compliance has left

Defendants unable to proceed in this case because the requested discovery would provide the basic information necessary to proceed"), adopted, 2014 U.S. Dist. LEXIS 136555 (E.D.N.Y. Sept. 22, 2014).

Further, the Plaintiff has alleged civil right violations arising from a murder investigation that took place in 2010. In the Court's view, the passage of time occasioned by the Plaintiff's nonparticipation and nonappearance has likely had a deleterious effect upon the Defendants' ability to defend themselves, and will continue to do so – a circumstance from which the Court may infer prejudice. See Shannon, 186 F.3d at 195 ("Because the events at issue in this lawsuit took place more than a decade before the district court dismissed the case, the likelihood that evidence in support of the federal defendants' position had become unavailable and that their witnesses' recollection had diminished was quite large. The district court was therefore entitled to presume prejudice to the federal defendants"); Paige, 2014 U.S. Dist. LEXIS 137722, at *15 (finding prejudice where "Plaintiff's inaction continues to delay the litigation, increasing the likelihood of 'fading memories and lost evidence'" (quoting Bhalla v. JP Morgan Chase & Co., 03-cv-6051, 2005 U.S. Dist. LEXIS 33430, at *6 (E.D.N.Y. Apr. 6, 2005) (Report and Recommendation), adopted, 2005 U.S. Dist. LEXIS 9049 (E.D.N.Y. Apr. 26, 2005))).

### 4. The Fourth Factor – Balancing the Court's Docket Against the Plaintiff's Opportunity to be Heard

"Under the fourth factor, a court considers 'the balance between district court calendar congestion and the plaintiff's right to an opportunity to be heard.'" Feurtado, 225 F.R.D. at 480 (quoting Norden Sys., 375 F.3d at 257). Although it

has been recognized that "[t]here must be compelling evidence of an extreme effect on court congestion before a litigant's right to be heard is subrogated to the convenience of the court," Lucas v. Miles, 84 F.3d 532, 536 (2d Cir. 1996), it is also true that " 'fairness to other litigants, whether in the same case or merely in the same court (as competitors for scarce judicial resources),' may require a district court to dismiss a case pursuant to Rule 41(b)," Feurtado, 225 F.R.D. at 480 (quoting Chira, 634 F.2d at 668); see Yacub v. Coughlin, 105 F.R.D. 152, 153 (S.D.N.Y. 1985) ("The Court cannot permit this litigant, or any litigant, to abuse its scarce resources while many others, desirous and deserving of relief, must patiently await their turn").

Courts have routinely held that where, as here, plaintiffs have "squandered multiple opportunities" to advance their cases, "and have caused needless expenditures of judicial resources to monitor their compliance with multiple court orders," dismissal is appropriate. Aybar, 2014 U.S. Dist. LEXIS 125087, at *12-*13; see Feurtado, 225 F.R.D. at 480 ("[T]he fact that [the plaintiff] repeatedly disobeyed court orders vastly diminishes his right to have his claim heard by this Court. . . . Because [the plaintiff] has made no effort to comply with the Court's directives or to prosecute his action, it would be unfair to the numerous other litigants who await the attention of this Court to permit [the plaintiff]'s suit to remain on the Court's docket"); Paige, 2014 U.S. Dist. LEXIS 137722, at *16 ("[T]he Court has expended a good deal of time and resources in addressing Plaintiff's case, however, the Plaintiff has failed to reciprocate in addressing Defendants'

interrogatories. The Court's interest in managing its docket greatly outweighs Plaintiff's interest in being heard as evinced by his noncompliance with numerous Court Orders and obligations").

Applying these standards, the Court is of the view that the Plaintiff's conduct to date demonstrates a severely diminished interest in having his claims heard. As discussed more fully above, over a two-year period, Judge Tomlinson has extended numerous leniencies to the Plaintiff and his attorney, repeatedly providing curative opportunities to appear in court; comply with her orders; fulfill discovery obligations; move this case forward; and otherwise act with the level of diligence and professionalism expected of federal court litigants and practitioners. However, the Plaintiff and his attorney have repeatedly declined to avail themselves of these opportunities, opting instead to defy multiple orders of the court, as well as their basic obligations under the Federal Rules. In the Court's view, such indolence cannot be tolerated, much less rewarded, by occupying a coveted place on the Court's typically crowded docket.

Accordingly, the fourth factor, namely, whether the Court's interest in managing its docket outweighs the plaintiff's interest in receiving an opportunity to be heard, weighs in favor of dismissal.

### 5. The Fifth Factor – Whether a Lesser Sanction is Available and Would be Effective

With respect to the fifth and final factor, the Court finds that a lesser sanction would be futile in this case.

As outlined above, Judge Tomlinson not only threatened O'Donnell with dismissal, but with serious attorney discipline for his actions in this case. Yet, he still refused to participate, ultimately failing to attend his own contempt hearing. As noted above, there is little doubt that the Plaintiff's conduct has prejudiced the Defendants' ability to prepare for trial; has slowed the discovery process to a halt; and has wasted the valuable resources of the Defendants, their counsel, and the Court.

Throughout all of this, O'Donnell has made no attempt to explain his actions, let alone cure his deficiencies; has ignored multiple orders to show cause as to why this matter should remain active; and has not responded to the instant motion to dismiss. Under similar circumstances, other courts have concluded that dismissal, though harsh, is the appropriate remedy. See, e.g., Blanc, 2015 U.S. Dist. LEXIS 170411, at *18 ("Plaintiffs' failures to appear at two court conferences, to confer with Experian's counsel regarding discovery as ordered by the Court, and to respond to . . . the instant motion, as well as their continued failure to communicate with anyone, including the Court, all render the sanction of dismissal with prejudice appropriate in this case"); Paige, 2014 U.S. Dist. LEXIS 137722, at *17-*18 ("While the Plaintiff has had adequate time to cure his deficiency, he has not even evinced an attempt"); Aybar, 2014 U.S. Dist. LEXIS 125087, at *13-*14 ("[N]o lesser sanction than dismissal is likely to be effective in light of plaintiffs' failure to respond to defendants' motions to dismiss or the court's multiple orders directing plaintiffs to take action or else risk possible dismissal"); Feurtado, 225 F.R.D. at 480

("[The plaintiff's] repeated violation of orders of this Court leads to the inexorable conclusion that no sanction short of dismissal would effectively address [the plaintiff's] conduct").

However, under the facts and circumstances of this case, the Court is not convinced that the dismissal of this action should be with prejudice. In this regard, the Second Circuit has explained the following:

> In deciding on the suitability of lesser sanctions, and whether the sanctions should be aimed primarily against the party or the attorney, it can be important for the district court to assess the relative roles of attorney and client in causing the delay, as well as whether a tactical benefit was sought by the delay. In making this statement, we are cognizant of the fact that a client is ordinarily bound by the acts of his lawyer, and this – of course – extends to behavior that would justify a dismissal for failure to prosecute. Link [v. Wabash R. Co.],37 U.S. [626,] 633-34 [82 S. Ct. 1386, 18 L. Ed. 2d 734 (1962)] & n.10; cf. Pioneer Inv. Servs. v. Brunswick Assocs., 507 U.S. 380, 113 S. Ct. 1489, 1499, 123 L. Ed. 2d 74 (1993). Nothing we say today contradicts that basic principle. This principle, however, does not relieve the district court of the obligation to consider the relevant factors before dismissing an action – especially the suitability of lesser sanctions. When the district court considers the appropriate sanction for failure to prosecute an action, the more the delay was occasioned by plaintiff's personal obstruction, or was designed to benefit the plaintiff's strategic interests, the more suitable the remedy of dismissal. Conversely, the more the delay was occasioned by the lawyer's disregard of his obligation toward his client, the more this factor argues in favor of a less drastic sanction imposed directly on the lawyer.

Dodson v. Runyon, 86 F. 3d 37 (2d Cit. 1996).

As discussed above, the Court has no doubt that the relevant evaluative factors dictate a sanction of dismissal at this juncture. However, the facts also paint a disturbing picture of a client, namely, the Plaintiff, who may have endured a great disservice at the hands of his attorney, O'Donnell. In this regard, the Court

can discern of no facts that would suggest the Plaintiff himself is responsible for the current posture of this case. Rather, the record is clear that O'Donnell's representation has fallen short of the legal standard at every turn. Aside from his repeated disregard for court orders; court appearances; discovery obligations; motion practice; and, apparently, possible referral to the grievance committee, the record further demonstrates that O'Donnell has also apparently neglected his client. A letter from the Plaintiff, which is uncontroverted, indicates that O'Donnell pressured him to withdraw this action, and that when he declined to do so, O'Donnell did not communicate with him for approximately eleven months. The Court notes that O'Donnell's conduct in this regard is particularly questionable because the Plaintiff is incarcerated. The record indicates that, for approximately two years, the Plaintiff – whose ability to participate in this action while in custody was already severely constrained – may have been operating under the mistaken belief that his claims were being diligently pursued by his attorney. However, the reality of the situation was far more serious.

In conclusion, although the present circumstances of this case weigh in favor of removing it from the Court's calendar and unburdening the Defendants from actively defending an essentially inactive case, the Plaintiff should not be held accountable for O'Donnell's apparent misfeasance through a permanent bar on his ability to re-file this lawsuit.

Accordingly, after considering the availability and effectiveness of lesser sanctions, the Court concludes that dismissal without prejudice is appropriate here.

### III.     Conclusion

Based on the foregoing, and upon due consideration of the relevant legal standards, the Court, in its discretion, grants the Defendants' motion to dismiss this action, without prejudice and with leave to re-file, in accordance with and subject to, the Federal Rules of Civil Procedure; the Local Civil Rules of the Eastern District; and this Court's Individual Rules of Practice.

It is **SO ORDERED.**

Dated:          Central Islip, New York
                      January 21, 2016


                                                            */s/ Arthur D. Spatt*
                                                            ARTHUR D. SPATT
                                                            United States District Judge